[Cite as *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, L.L.P.*, 2017-Ohio-8394.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CATHERINE L. MCFARLAND, et al. | C.A. No.     28462 |
| Appellants | |
| v. | |
| NIEKAMP, WEISENSELL, MUTERSBAUGH & MASTRANTONIO, LLP, et al. | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.     CV-2014-07-3403 |

DECISION AND JOURNAL ENTRY

Dated: November 1, 2017

---

CALLAHAN, Judge.

{¶1}     Appellants, Catherine McFarland and Jennifer Folden, ("the Clients"), appeal the judgment of the Summit County Court of Common Pleas in favor of Appellee, Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP ("Niekamp" or "the Firm"). For the reasons set forth below, this Court reverses.

I.

{¶2}     The Clients retained the law firm of Mannion & Gray to pursue a claim against their former stockbroker for alleged misconduct. The case was assigned to attorney Rami Awadallah, an associate at Mannion & Gray. Mr. Awadallah met with the Clients, reviewed documents, and drafted a complaint, which he claimed to have filed on their behalf.

{¶3}     Subsequently, Mr. Awadallah notified the Clients that he was leaving Mannion & Gray to start his own firm, Awadallah & Hudak. The Clients agreed to continue their

representation with Mr. Awadallah at his new law firm.  Mr. Awadallah later closed his law firm and joined the law firm of Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP.

{¶4}    Mr. Awadallah did not notify the Clients of this change in law firms. Instead, the Clients discovered this information when they began looking for Mr. Awadallah on the internet. Ms. McFarland called Niekamp and the receptionist confirmed Mr. Awadallah worked there.

{¶5}    For eight months, Ms. McFarland communicated by telephone and email with Mr. Awadallah while he was employed at Niekamp.  Ms. McFarland either spoke directly with Mr. Awadallah or left messages for him.  The messages were transmitted by the office personnel to Mr. Awadallah via Niekamp's office email.  Ms. McFarland spoke with five different office personnel, including the office manager, who took messages and scheduled an appointment for Mr. Awadallah.   Three of the office personnel initiated calls to Ms. McFarland at Mr. Awadallah's direction.

{¶6}    According to the Clients, Mr. Awadallah met with them to discuss their case.  At the meeting, Mr. Awadallah gave the Clients his business card which indicated he was affiliated with Niekamp. The meeting was not held at Niekamp's offices. Mr. Awadallah later told the Clients that he had rejected a settlement offer and was considering refiling the complaint in a different county.

{¶7}    Mr. Awadallah contends the scope of the telephone calls to Ms. McFarland while he was with Niekamp was to explain that he no longer represented them. He denied meeting with the Clients and giving them his business card. He further denied the conversation about a settlement offer.

{¶8}    Thereafter, Mr. Awadallah's communication with Ms. McFarland discontinued, despite her leaving messages at Niekamp for another four months. The Clients filed a grievance

against Mr. Awadallah. Through the grievance investigation, the Clients learned that Mr. Awadallah never filed the complaint against their former stockbroker and the time to do so had expired.

{¶9} The Clients filed a complaint asserting legal malpractice against Mr. Awadallah and vicarious liability against Niekamp and Mannion & Gray. All of the defendants moved for summary judgment. The trial court denied Mr. Awadallah's and Mannion & Gray's motions, but granted Niekamp's motion on the theory of apparent authority. The trial court denied Niekamp's motion on the issue of causation expert and declined to address the statute of limitations argument.

{¶10} The Clients subsequently settled their vicarious liability claim against Mannion & Gray, leaving only the legal malpractice claim against Mr. Awadallah. The trial court then amended the summary judgment decision to add the Civ.R. 54(B) certification as to the judgment in favor of Niekamp.

{¶11} The Clients have timely appealed, raising one assignment of error for this Court's review. Niekamp has raised two cross-assignments of error.

{¶12} Prior to the briefing of the assignments of error, Niekamp moved to dismiss the appeal for lack of jurisdiction. This Court deferred ruling on the motion to dismiss until "the final disposition of the appeal." Niekamp asserted the summary judgment decision is not a final, appealable order and the trial court abused its discretion when it amended the summary judgment decision by adding the Civ.R. 54(B) certification. Upon consideration, Niekamp's motion to dismiss the appeal is denied.

II.

**APPELLANTS' ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF [] NIEKAMP.

{¶13} The Clients argued the trial court erred in granting summary judgment in favor of Niekamp as to the vicarious liability claim because there are genuine issues of material fact regarding whether Niekamp created the appearance of apparent authority. This Court agrees.

{¶14} Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

{¶15} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶16} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this

burden, the non-moving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E).

{¶17} The parties agreed that Mr. Awadallah did not have actual authority to represent them. Instead, the Clients argued Niekamp was vicariously liable because Mr. Awadallah acted with apparent authority when representing them.

{¶18} "Apparent authority * * * is sometimes referred to as the 'holding out' theory." *Mason v. Labig*, 2d Dist. Greene No. 87-CA-91, 1989 Ohio App. LEXIS 2596, *13 (June 29, 1989), quoting *Arthur v. St. Peters Hosp.*, 405 A.2d 443, 446 (N.J.1979). The Ohio Supreme Court has explained the type of evidence necessary to establish apparent authority as follows:

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570 (1991), syllabus. In determining whether an agent is acting with apparent authority, the court must examine the principal's acts, and not the agent's acts. *Id*. at 576. When the principal's acts have clothed the agent with the appearance of authority, the principal is liable for the agent's acts. *Id*. at 576-577. "An agent acts within the scope of their employment when they act with actual authority or apparent authority." *Barnes v. Village of Cadiz*, 7th Dist. Harrison No. 01 531 CA, 2002 Ohio App. LEXIS 7290, * 15 (Mar. 19, 2002), citing *Master Consol. Corp.* at 576.

{¶19} In its summary judgment motion, Niekamp argued that, based on a presumption that Mr. Awadallah was representing the Clients, such legal representation was outside the scope of his employment because he failed to comply with Niekamp's policies relative to bringing a new client to the Firm. Niekamp asserted Mr. Awadallah was "'moonlighting'" in his representation of the Clients and, thus, acted outside the scope of his employment and there was no actual or apparent authority. The trial court found that Mr. Awadallah exceeded his actual authority when he failed to follow the Firm's policies regarding new clients. The Clients do not dispute the finding as to actual authority.

{¶20} The trial court went on to find that all of the conduct relative to representing the Clients was undertaken by Mr. Awadallah, and not by Niekamp. Additionally, the trial court found the Clients did not authorize the transfer of their file to Niekamp. Based on the Clients' prior dealings with Mr. Awadallah, the trial court held that they knew or should have known that it was necessary to transfer their file to Niekamp in order to continue representation. Based on the lack of a genuine issue of material fact as to these two elements, the trial court found there was no apparent authority.

{¶21} The Clients challenged the trial court's finding that there was "no evidence to suggest Niekamp did anything to make [the Clients] believe that they were clients of the [F]irm or that [Mr.] Awadallah had authority to represent them." The Clients asserted six different instances of Niekamp's conduct that established they were clients of the Firm or that Mr. Awadallah had the authority to represent them and why their belief was reasonable.

**Apparent Authority: holding out the agent to the public**

{¶22} There is no dispute that Mr. Awadallah was working as an attorney at Niekamp. The role of an attorney in a law firm is to represent the interests of clients. To confer apparent

authority, Niekamp needed to act in a way that appeared to give Mr. Awadallah the authority to do those things that attorneys in law firms normally do. In this case, Niekamp had a website advertising its legal services and listing the names and pictures of the attorneys employed by the Firm. Mr. Awadallah was held out to the public by Niekamp on its website as an attorney employed by the Firm and with the authority to represent clients on the Firm's behalf. Similarly, Mr. Awadallah had business cards that included the Firm's name and emblem as well as his name. Again, Niekamp held Mr. Awadallah out to any recipient of the business card as being an attorney employed by the Firm and having the authority to represent clients on the Firm's behalf. Who gave the business card to the Clients is irrelevant in the apparent authority analysis. Instead, the fact that Mr. Awadallah had business cards, such as those described above, vested Mr. Awadallah with the authority to represent clients on behalf of the Firm.

{¶23} In further support of their apparent authority position, the Clients relied on conduct by the Niekamp receptionist, secretaries, and office manager. In its brief, Niekamp adamantly argued that the conduct of the secretaries "cannot form an attorney-client relationship" and that "'[t]he legal responsibilities of counsel cannot be assigned or transferred to a secretary.'" While Niekamp is correct as to these points, neither is relevant to this analysis. The inquiry is whether Niekamp, through its staff, held Mr. Awadallah out as its agent to represent clients on its behalf.

{¶24} Niekamp also stated that "[c]lients hire law firms; not receptionists or office managers." (Emphasis deleted.) While this is true, Niekamp ignores the fact that law firms hire receptionists, secretaries, and officer managers, and these staff members work for the attorneys and the firm. Taking messages from clients and calling clients to schedule a meeting or to relay other messages is within the scope of employment for a receptionist, secretary, and office

manager. *See In re Estate of Mercurio*, 7th Dist. Mahoning No. 00 CA 108, 2003-Ohio-1437, ¶ 30 ("A secretary making calls to a client concerning a hearing involving the client's case is a matter within the scope of the agency or employment."); *In re Estate of Williams*, 7th Dist. Mahoning No. 00 CA 109, 2003-Ohio-1436, ¶ 46.

**{¶25}** In this case, there was deposition testimony, email messages, and notes kept by Ms. McFarland regarding the telephone contact between Ms. McFarland, Mr. Awadallah, and the Firm. Niekamp attempted to minimize the importance of the telephone calls by saying there were only "a few administrative phone calls with office staff" and labeling the calls as "ministerial duties" and "administrative functionary." Over the period of a year, there was evidence of at least 25 messages taken by the Niekamp office staff for Mr. Awadallah from Ms. McFarland. The phone messages were taken by the receptionist (19 messages), the office manager (1 message), the secretary to attorney Weisensell, a named principal of the Firm (3 messages), the secretary to attorney Niekamp, a named principal of the Firm (1 message), and the secretary to attorney Mastrantonio, a named principal of the Firm (1 message). The majority of the email messages only listed Ms. McFarland's name, her phone number, and the date and time of her call. However, one of the messages from the receptionist included an additional statement that Ms. McFarland "[n]ever received [a] copy of [the] letter." Further, there were two messages taken by attorney Weisensell's secretary which contained additional comments. The first message indicated Ms. McFarland "wanted a status update" and the second message indicated Mr. Awadallah "would know what it is regarding."

**{¶26}** Additionally, the Niekamp office staff initiated three phone calls to Ms. McFarland. The first phone call was made by the office manager and the purpose of the call was to schedule a meeting between the Clients and Mr. Awadallah. In the email confirming the

meeting, the office manager indicated that Ms. McFarland asked for Mr. Awadallah to "bring a copy of the letter [he] sent to Smith Barney on [their] behalf." The second phone call was initiated by attorney Mastrantonio's secretary to Ms. McFarland. The purpose of the phone call was to inform Ms. McFarland that Mr. Awadallah and his wife had recently had a baby and that he would call back once he returned to the office. The third phone call was initiated by attorney Weisensell's secretary to Ms. McFarland. This phone call was to advise Ms. McFarland that Mr. Awadallah would call her back on the following day.

**{¶27}** The receptionist, office manager, and three secretaries who took the messages and/or made calls to Ms. McFarland were all employees of Niekamp. Three of these employees worked for named principals of the Firm. The knowledge of a secretary in relaying messages is imputable to the attorneys/principals for whom they work. *See Wyrick v. Meridian Mut. Ins. Co.*, 2d Dist. Montgomery No. 16468, 1998 Ohio App. LEXIS 3, *4 (Jan. 9, 1998). The volume of messages, combined with the extra statements regarding the status of the case, copies of a letter, and scheduling a meeting, is evidence of knowledge by the office staff regarding the Clients that is imputable to the attorneys/principals for which they worked. Ms. McFarland testified that while no one ever called her a "client" the "secretaries and the assistants * * * knew who [she] was when [she] called * * * because [she] had been calling [Mr. Awadallah]." Thus, the incoming phone messages, outgoing calls, and scheduling of a meeting, all handled by Niekamp's office staff, were "indicia of firm involvement or representation of the [Clients'] interests." Accordingly, the Clients presented evidence of Niekamp holding Mr. Awadallah out to the Clients as having apparent authority to represent the Clients on behalf of Niekamp.

**{¶28}** The trial court set forth a number of facts to find that "there [was] no genuine issue of material fact that Niekamp did not create the appearance of apparent authority." These

facts all addressed what Niekamp did not do relative to holding Mr. Awadallah out as its agent to the Clients. These facts standing alone could have supported the trial court's finding. However, as addressed above, the record contained additional evidence of what Niekamp did do to hold Mr. Awadallah out as it agent to the Clients. When considering all of the evidence presented, the Clients have met their *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the first prong of apparent authority.

{¶29} Niekamp presented to this Court the following arguments to further support the trial court's summary judgment ruling on apparent authority. First, Niekamp reasserted its arguments relative to Mr. Awadallah's failure to comply with the Firm's policies to argue that he "did not have authority to represent [the Clients] as an employee of Niekamp." The trial court only applied these facts to its finding on actual authority, thus Niekamp's argument is moot as applied to apparent authority.

{¶30} Next, Niekamp presented a new argument applying *Estate of Barney v. Manning*, 8th Dist. Cuyahoga No. 94979, 2011-Ohio-480, to the apparent authority analysis. Niekamp asserted Mr. Awadallah's conduct in lying to the Clients and being deceptive was consistent with the type of intentional conduct found in *Barney* and, thus, Mr. Awadallah was outside the scope of his employment. While Niekamp relied upon *Barney* in its summary judgment motion, it did not assert this particular argument to the trial court nor did the trial court make such a finding. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Accordingly, Niekamp has waived this argument.

{¶31} Lastly, Niekamp presented an alternative argument on appeal that Mr. Awadallah never represented the Clients while employed at Niekamp and, thus, there was no attorney-client

relationship with the Firm. Niekamp asserted this argument in its summary judgment motion. However, the trial court did not make a finding on this issue. This Court has repeatedly held that issues raised in summary judgment motions, but not considered by the trial court will not be decided by this Court in the first instance. *See Skidmore v. Natl. Bronze & Metals (Ohio), Inc.*, 9th Dist. Lorain No. 12CA010328, 2014-Ohio-4423, ¶ 16; *Neura v. Goodwill Indus.*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 19; *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 13.

**Apparent Authority: reasonable belief that the agent had authority**

{¶32} As to the second prong of the apparent authority analysis, the Clients argued that they had acted in good faith to believe that Mr. Awadallah possessed the necessary authority to represent them as clients of Niekamp. In light of this Court's analysis as to the first prong of apparent authority, the Clients' arguments as to the second prong are moot. *See* App.R. 12(A)(1)(c).

{¶33} After considering the foregoing arguments, the trial court erred by granting summary judgment in favor of Niekamp as against the Clients. The Clients' assignment of error is sustained.

**APPELLEE'S CROSS-ASSIGNMENTS OF ERROR**

> SUMMARY JUDGMENT WAS WARRANTED BECAUSE [THE CLIENTS] FAILED TO ESTABLISH PROXIMATE CAUSATION WITH REQUIRED EXPERT TESTIMONY[.]

> SUMMARY JUDGMENT WAS WARRANTED BECAUSE THE UNDERLYING CLAIMS WERE BARRED BY THE SIX YEAR "ELIGIBILITY" RULE GOVERNING MANDATORY FINRA ARBITRATIONS BEFORE [MR.] AWADALLAH BECAME EMPLOYED BY NIEKAMP[.]

**{¶34}** In the event the trial court's grant of summary judgment based on the theory of apparent authority were to be reversed, Niekamp asserted two cross-assignments of error. The cross-assignments argue that the trial court's summary judgment decision in favor of Niekamp on the claim of vicarious liability should be affirmed on two alternative bases: 1) the Clients failed to present evidence that they would have prevailed in the mandatory arbitration and, thereby, failed to establish there was a genuine issue of material fact as to the issue of proximate cause; and 2) "[a]s a matter of law, a principal cannot be held vicariously liable for a failure to pursue time-barred and unsustainable claims." This Court declines to address both cross-assignments, but for different reasons.

**Cross-assignment regarding causation**

**{¶35}** The trial court granted summary judgment in favor of Niekamp on the vicarious liability claim based upon apparent authority. The trial court certified only that as being final and appealable pursuant to Civ.R. 54(B). Therefore, the trial court's finding that there was no just reason for delay did not make appealable other portions of the order that were otherwise non-appealable. *See Allen v. Johnson*, 9th Dist. Wayne Nos. 01CA0046, 01CA0047, 2002-Ohio-3404, ¶ 9, *aff'd in part and rev'd in part*, 100 Ohio St.3d 276, 2003-Ohio-5889, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88-89 (1989); *see Noble v. Colwell*, 44 Ohio St.3d 92, 96 (1989).

**{¶36}** Generally, the denial of summary judgment is a non-final order in accordance with R.C. 2505.02, because it does not determine the action and prevent a judgment. *Celebreeze v. Netzley*, 51 Ohio St.3d 89, 90 (1990). Instead, the "denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." *Balson v. Dodds*, 62 Ohio St.2d 287 (1980), paragraph one of the syllabus. Unless an exception to this

general rule exists, such as an order made in a special proceeding, the denial of summary judgment is not final and appealable. *See Celebreeze* at 90. No such exception applies in this case. Therefore, the aspect of the trial court's order denying Niekamp summary judgment is not final and appealable. *See Allen* at ¶ 11.

**Cross-assignment regarding statute of limitations**

{¶37} Based on the trial court's grant of summary judgment on apparent authority, it specifically indicated that it was not ruling on the alternative statute of limitations argument. Thus, the trial court did not review the evidence and decide whether the statute of limitations barred the legal malpractice claim and, thereby, precluded the vicarious liability claim as a matter of law. *See Hicks v. Cadle Co.*, 11th Dist. Trumbull No. 2014-T-0103, 2016-Ohio-4728, ¶ 36 (declining to consider the cross-assignment of error because the trial court had not yet reviewed the factual allegations and legal arguments of the statute of limitations issue); *Fullum v. Columbiana Cty. Coroner*, 7th Dist. Columbiana No. 12 CO 51, 2014-Ohio-5512, ¶ 44.

{¶38} As stated above, this Court will not decide in the first instance issues raised in summary judgment motions, but not considered by the trial court. *See Skidmore*, 2014-Ohio-4423, at ¶ 16; *Neura*, 2012-Ohio-2351, at ¶ 19; *Guappone*, 2009-Ohio-5540, at ¶ 13. To consider summary judgment arguments in the first instance on appeal "effectively depriv[es] the non-prevailing party of appellate review." *Guappone* at ¶ 13.

III.

{¶39} Ms. McFarland's and Ms. Folden's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DAVID P. MEYER, JOHN C. CAMILLUS, and COURTNEY M. WERNING, Attorneys at Law, for Appellants.

RUDOLPH A. PECKINPAUGH, JR. and JARED J. LEFEVRE, Attorneys at Law, for Appellee.