[Cite as *Oberlin v. Lorain Cty. Joint Vocational School Dist. Bd. of Edn.*, 2019-Ohio-3977.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| CITY OF OBERLIN, OHIO | C.A. No. 18CA011338 |
| Appellee/Cross-Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LORAIN COUNTY JOINT VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO CASE No. 15CV186653 |
| Appellant/Cross-Appellee | |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

---

SCHAFER, Judge.

{¶1} Defendant-Appellant/Cross-Appellee, Lorain County Joint Vocational School District Board of Education ("JVS") and Plaintiff-Appellee/Cross-Appellant, City of Oberlin ("Oberlin"), appeal the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, we affirm in part, reverse in part, and remand.

I.

{¶2} This matter involves a contract dispute arising forty years after the execution of the contract at issue. Oberlin and JVS are both political subdivisions. In 1969, JVS bought approximately 131 acres of land located in the unincorporated Pittsfield Township for the construction of the Lorain County Joint Vocational School facility. Although JVS originally planned to construct an on-site sewage treatment plant, that plan became unworkable for a variety of reasons.

{¶3}  Although the site was not contiguous with Oberlin, and therefore not eligible for annexation, Oberlin and JVS entered into an agreement in 1971 whereby Oberlin agreed to extend a sanitary sewer line to the site.  The parties agreed to share various costs related to the project and that JVS would sign an annexation petition for their property if one was presented to them.  Pursuant to the agreement, Oberlin would collect tap-in charges for future connections to the sewer line and, after recovering its costs for the project, forward to JVS the balance of monies collected until JVS had recuperated its costs, less the cost of the front footage charged against it.

{¶4}  The JVS's property eventually became contiguous with Oberlin, and in August 2014, Oberlin presented JVS with an expedited type-I annexation petition.  *See* R.C. 709.021 and 709.022.  JVS did not sign the petition but instead filed an expedited type-II annexation petition with the Lorain County Board of Commissioners ("County Commissioners") on June 24, 2015.  *See* R.C. 709.023.  Under an expedited type-II annexation, Oberlin would be prohibited from collecting municipal income tax from JVS employees and contractors.  *See* R.C. 709.023(J).

{¶5}  Consequently, Oberlin filed suit in the Lorain County Court of Common Pleas seeking a declaratory judgment, specific performance, and damages for breach of contract against JVS.  Specifically, Oberlin claimed that under the 1971 agreement, JVS was required to sign the expedited type-I annexation petition that Oberlin had presented to JVS and that JVS was prohibited from submitting an expedited type-II annexation petition.  Oberlin's complaint sought specific performance and a court order that JVS sign Oberlin's type-I petition and an injunction against the County Commissioners seeking to enjoin them from processing JVS's expedited type-II annexation petition. Oberlin further asserted that it had suffered damages as a result of JVS's failure to sign the type-I petition.

{¶6} The trial court granted Oberlin's motion for a temporary restraining order, and enjoined the County Commissioners from considering or granting the annexation of JVS's property pursuant to either annexation petition already filed with the board or any future annexation petition pending further order of the court or consent of both parties.

{¶7} Following "a significant amount of paper discovery," JVS eventually filed a counterclaim seeking a writ of mandamus commanding Oberlin and the County Commissioners to move forward on JVS's expedited type-II annexation petition and seeking damages for breach of contract for Oberlin's failure to remit sanitary sewer tap-in connection fees and for the destruction of public records.

{¶8} Both Oberlin and JVS filed competing motions for summary judgment relating to all claims between the parties. The trial court ultimately issued a judgment entry granting in part and denying in part Oberlin's claim for declaratory judgment, denying Oberlin's claims for specific performance and breach of contract, granting JVS's counterclaim for breach of contract, denying JVS' counterclaim for a writ of mandamus as moot, and finally, denying JVS's counterclaim for damages for the destruction of public records as time-barred. The trial court's rulings were based on its determination that the agreement at issue was a valid and enforceable contract and that JVS was only obligated by the contract to sign a traditional annexation petition and not the expedited type-I petition. The court further determined that JVS was not permitted under the agreement to submit its own petition or negotiate its own terms for annexation. Regarding JVS's breach of contract claim, the court determined that Oberlin had failed to forward funds related to the sanitary sewer-tap in fees to JVS as agreed in the contract and, following a damages hearing, awarded JVS $6,778.38.

{¶9} Both Oberlin and JVS filed timely appeals. JVS raises three assignments of error for our review and Oberlin raises two. For ease of analysis, we have rearranged the assignments of error.

II.

{¶10} Under Civ.R. 56(C), summary judgment is appropriate when:

> (1)[no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. A review of a trial court's grant of summary judgment is considered de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Accordingly, we apply the same standard as the trial court, viewing the facts in the light most favorable to the non-moving party and resolving any doubt in the favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶11} "The role of courts in examining contracts is to ascertain the intent of the parties." *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 18, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "Where the terms in a contract are not ambiguous, courts are constrained to apply the language of the contract." *Id.* citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). "'[U]nless there is fraud or other unlawfulness involved, courts are powerless to

save a competent person from the effects of his own voluntary agreement.'" *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, ¶ 29, quoting *Ullmann v. May*, 147 Ohio St. 468, 476 (1947).

## JVS's Assignment of Error I

**The trial court erred as a matter of law in not concluding that the 1971 contract is void and unenforceable for failing to attach an R.C. 5705.41 fiscal certificate.**

{¶12} In its first assignment of error, JVS contends that the trial court erred by denying JVS' motion for summary judgment because the 1971 contract was void. JVS argues that the underlying contract was invalid because a fiscal certificate was not attached pursuant to R.C. 5705.41. We disagree.

{¶13} In its motion for summary judgment, JVS argued, inter alia, that the alleged contract in Oberlin's complaint was void and unenforceable because it lacked a fiscal certificate from one or both parties, a fact Oberlin does not dispute. Former R.C. 5705.41, provides that

No subdivision or taxing unit shall:

(A) Make any appropriation of money except as provided in [R.C. 5705.41] to [R.C. 5705.47].

* * *

(D) Make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from an previous encumbrances. Every such contract made without such a certificate shall be void and no warrant shall be issued in payment of any amount due thereon.[1]

---

[1] Although revised and renumbered, the language on which JVS relies has remained substantially unchanged. *See* R.C. 5705.41(D)(1).

 "Thus, where a certificate is required, failure to include one is fatal to the validity of the contract." *NaphCare, Inc. v. Cty. Council of Summit Cty*, 9th Dist. Summit No. 24906, 2010-Ohio-4458, ¶ 11, quoting *State v. Kuhner*, 107 Ohio St. 406, 413-414 (1923). "[C]ertification pursuant to R.C. 5705.41 serves two purposes: (1) 'to prevent fraud and the reckless expenditure of public funds[;]' and (2) 'to preclude the creation of any valid obligation against the [political subdivision] above or beyond the fund previously provided and at hand for such purpose.'" *Id.* at ¶ 21, *Kuhner* at 413.

{¶14} JVS argues that the contract at issue required a fiscal certificate because it "called for the expenditure of money on the part of both the JVS and Oberlin." Although "expenditure" is not specifically defined by the statute, the term is commonly defined as "[t]he act or process of spending or using money, time, energy, etc.; esp[ecially], the disbursement of funds * * * ." *Black's Law Dictionary*, 11th Ed.2019). JVS does not point to any specific provision of the contract for its assertion, arguing only that the contract "clearly required each political subdivision to expend funds under the agreement."

{¶15} The contract at issue explains the parties' reasons for entering into the agreement as follows:

> Whereas, [Oberlin] operates a sanitary waste disposal system primarily within the City of Oberlin, Ohio, and
>
> Whereas, the [JVS] is in the process of constructing a Joint Vocation Education School on Route 58, South of the Corporate limits of the City of Oberlin, and
>
> Whereas, the [JVS] is interested in arranging for sanitary sewer services for said school building, and [Oberlin] is willing to have said School tied into the existing sanitary sewer system under certain conditions.

Accordingly, Oberlin agreed to secure permission from the State of Ohio to install the sewer line and to "cause the necessary plans, specifications and estimates of cost necessary to advertise for

bids" and when the plans were prepared would advertise for said bids. The agreement goes on to state that once bids have been received, "both [Oberlin] and [JVS] shall review them, and if they are acceptable to both parties, Oberlin shall award the contract[.]" The agreement then states which part of the project each party would be responsible to pay.

{¶16} Upon review, we determine that JVS did not meet its initial *Dresher* burden to show that the contract at issue required a fiscal certificate pursuant to former R.C. 5705.41 since the contract did not authorize any disbursement of funds. Although the contract anticipated a future expenditure of funds by the parties, such expenditure was speculative and would have been paid to a third party assuming an acceptable bid had been received after Oberlin had "cause[d] the necessary plans, specifications and estimates of cost necessary to advertise for bids[.]" Thus, the contract at issue merely outlines the respective responsibilities of each party as to possible future costs and does not provide for a contemporaneous expenditure of funds by the parties bound by the agreement.

{¶17} JVS' first assignment of error is overruled.

### Oberlin's Assignment of Error I

**The trial court erred as a matter of law in finding that Oberlin breached the 1971 Agreement by not remitting to JVS sanitary sewer tap-in fees received after JVS materially breached the Agreement and after Oberlin commenced this action in the trial court.**

{¶18} In its first assignment of error, Oberlin contends that the trial court erred when it determined that Oberlin had breached the 1971 contract because: (1) Oberlin performed all of its material obligations under the agreement; and (2) its obligation to remit sanitary sewer tap-in fees to JVS, which did not arise until after the present litigation was commenced, was excused by JVS's own material breach of the contract.

## A. Forfeiture of Affirmative Defense

**{¶19}** As an initial matter, we must determine whether Oberlin has forfeited these arguments. JVS argues that Oberlin waived these arguments because it "did not raise anticipatory breach/repudiation, or material breach/substantial performance, as affirmative defenses in its reply to JVS's counterclaim for breach of contract."

**{¶20}** Civ.R. 8(C) provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * any * * * matter constituting an avoidance or affirmative defense." "Failure to set forth an affirmative defense, other than those listed in Civ.R. 12(B), acts as a waiver if the defense was not raised in the pleadings or in an amendment to the pleadings." *Matrix Acquisitions, L.L.C. v. Manley*, 9th Dist. Summit No. 27191, 2014-Ohio-2860, ¶ 9, citing *Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St.3d 18, 20 (1998).

**{¶21}** "An affirmative defense assumes the allegations in the complaint to be true, but constitutes a defense to them." *Aquatic Renovations Systems, Inc. v. Village of Walbridge*, 6th Dist. Wood No. WD-17-038, 2018-Ohio-1430, ¶ 27, citing *Davis v. Cincinnati, Inc.*, 81 Ohio App.3d 116, 119 (9th Dist.1991). Specifically, "[a]n affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance')." *State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33 (1996).

**{¶22}** To prove a breach of a contract, a plaintiff must demonstrate by a preponderance of the evidence that a contract existed, the plaintiff fulfilled its obligations, the defendant failed to fulfill its obligations, and plaintiff suffered damages as a result. *Price v. KNL Custom Homes,*

*Inc.*, 9th Dist. Summit No. 26968, 2015-Ohio-436, ¶ 30. "The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922), paragraph two of the syllabus. Thus, "[i]n the law of contracts, 'substantial performance' is [an] approximation of full performance such that the parties obtain, in the main, what the contract called for, although it is not complete and final performance in every particular." *Stone Excavating, Inc. v. Newmark Homes, Inc.*, 2d Dist. Montgomery No. 20307, 2004-Ohio-4119, ¶ 13, citing 17A American Jurisprudence 2d, Contracts, Section 619, at 576.

{¶23} Thus, Oberlin's claim of substantial performance in this case attacks an essential element of JVS's claim and is not in the nature of confession and avoidance and, therefore, is not an affirmative defense. *See Sims v. Anderson*, 4th Dist. Washington No. 14CA31, 2015-Ohio-2727, ¶ 19 (summarily stating that substantial compliance is not an affirmative defense to a contract). Accordingly, Oberlin did not forfeit this argument below.

{¶24} On the other hand, although Oberlin maintains it did not breach the contract, it argues in the alternative that if it did breach the contract, JVS's alleged anticipatory breach of the contract prevents JVS from recovery. Thus, Oberlin's claim of anticipatory breach is in the nature of confession and avoidance, and, therefore, an affirmative defense. *See Plain Dealer Publishing Co.*, 75 Ohio St.3d at 33. Oberlin did not raise this purported affirmative defense in a responsive pleading below. Accordingly, "[b]ecause [Oberlin] never asserted [anticipatory breach] in a responsive pleading, instead asserting it for the first time in a motion for summary judgment, [it] waived [its] affirmative defense." *Nationstar Mtge., L.L.C. v. Young*, 9th Dist. Summit No. 28134, 2016-Ohio-8287, ¶ 23.

**B. Substantial Performance**

{¶25} As recognized above, the settled law in Ohio is that "merely nominal, trifling, or technical departures are not sufficient to breach [a] contract." *Cochran*, 104 Ohio St. 427 at paragraph two of the syllabus. "However, for the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract, and application of the doctrine of substantial performance should be confined to very narrow limits, and to the cases where there has been an honest effort to perform." (Internal quotations and citations omitted.) *Wengerd v. Martin*, 9th Dist. Wayne No. 97CA0046, 1998 WL 225107, *1 (May 6, 1998). "A party has not substantially performed when the omissions complained of are material to the essential duties promised." *Steen Elec. v. Homes of Elegance, Inc.*, 9th Dist. Summit No. 21876, 2004-Ohio-6275, ¶ 17. "When the facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court." *Luntz v. Stern*, 135 Ohio St. 225 (1939), paragraph five of the syllabus.

{¶26} Although Oberlin's merit brief cites case law relevant to substantial performance, it does not articulate in what way Oberlin substantially performed. Instead, Oberlin reasserts that its duty to reimburse JVS did not arise until after the present litigation commenced and after JVS refused annexation. We have already determined that Oberlin waived the purported affirmative defense of anticipatory repudiation and we decline to develop a substantial performance argument on Oberlin's behalf. *See State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47, citing *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

{¶27} Oberlin's first assignment of error is overruled.

**Oberlin's Assignment of Error II**

**The trial court erred as a matter of law in denying Oberlin's claim for specific performance and declaring that the JVS is obligated to sign a traditional annexation petition only.**

{¶28} In its second assignment of error, Oberlin contends that the trial court erred by denying its claim for specific performance and determining that JVS was only obligated to sign a traditional annexation petition. Oberlin's argument in this assignment of error focuses almost entirely on its contentions related to specific performance but does briefly reference the extensive argument in its first assignment of error alleging that the 1971 contract obligated JVS to sign the annexation petition. Although App.R. 16(A)(7) requires an appellant to separately argue each assignment of error, we elect under the circumstances here to consider Oberlin's argument that JVS was obligated to sign the expedited type-I annexation petition because that is the type of petition Oberlin presented to JVS. *See* App.R.12 (A)(2).

{¶29} In exchange for Oberlin agreeing to extend its sanitary sewer system to JVS's property, JVS agreed in the 1971 contract "to sign an annexation petition for their property if presented to them." In its complaint, Oberlin argued that it was entitled to a declaratory judgment that this provision obligated JVS to sign the type-I annexation petition when it was presented to them. On the contrary, JVS argued in its motion for summary judgment that it was entitled to summary judgment on Oberlin's claim "because neither party contemplated an expedited annexation petition process at the time of the [1971 contract]."

{¶30} Our role in examining the 1971 contract "is to ascertain the intent of the parties." *St. Marys*, 2007-Ohio-5026 at ¶ 18, citing *Hamilton Ins. Servs., Inc.*, 86 Ohio St.3d at 273. "Where the terms in a contract are not ambiguous, courts are constrained to apply the language of the contract." *St. Marys* citing *Nationwide Mut. Fire Ins. Co.*, 73 Ohio St.3d at 108. In this

case, Oberlin does not argue that the terms of the 1971 agreement are ambiguous, but instead argues that the term stating "[JVS] further agrees to sign an annexation petition for their property if presented to them" "imposes no limitation upon the type of petition Oberlin might choose to tender or what annexation process might be employed[.]"

{¶31} However, "[t]he Supreme Court of Ohio has held that the law existing at the time a contract is executed becomes a part of that contract." *Labate v. Natl. City Corp.*, 113 Ohio App.3d 182, 185 (9th Dist.1996), citing *E. Mach. Co. v. Peck*, 161 Ohio St. 1, 6-7 (1959). In Ohio, territorial annexation is strictly a statutory process. *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411, ¶ 2; *see* R.C. 709.01 et seq. Notably, the special expedited type-I annexation procedure provided in R.C. 709.022 did not exist until March 2002. *See* Am.Sub.S.B. No. 5, 2001 Ohio Laws File 36. In 1971, the only territorial annexation process then in existence was the traditional annexation process. *See* former R.C. 709.02, et seq. Although the annexation statute has been revised over time to allow special procedures in specific circumstances, the traditional annexation process has remained substantially the same. *See* Am.Sub.S.B. No. 5, 2001 Ohio Laws File 36 (inter alia, creating three special procedures for expedited annexation and revising the process for appealing the decision of a board of commissioners); *see also* R.C. 709.02, et seq. As the expedited type-I annexation procedure did not exist when the 1971 contract was executed, it could not have been the intent of the parties to obligate JVS to sign such a petition. Rather, the parties could only have intended for annexation to proceed through the traditional process that existed when the 1971 contract was executed.

{¶32} Oberlin further argues that "the expedited type-I process most closely and efficiently accomplishes the Parties' intent" that JVS's property be annexed since the only

difference between the traditional annexation process and the expedited type-I procedure is that the annexation is accomplished without holding a hearing. *See* R.C. 709.02; R.C. 709.03; R.C. 709.022. While it may be true that the expedited type-I process is the most efficient means to achieve the intended result—the annexation of JVS's property, JVS was not *obligated* by the contract to sign such a petition.

{¶33} Oberlin's second assignment of error is overruled.

### JVS' Assignment of Error II

**[T]he trial court erred as a matter of law in declaring that the contract bars the JVS from ever submitting its own annexation petition, without the prior approval of [Oberlin]. In turn, the trial court erred in issuing a permanent injunction against the County Commissioners, barring the Commissioners from taking any action on the JVS's duly filed expedited type-II annexation petition.**

{¶34} In its second assignment of error, JVS argues that the trial court erred by determining that the contract barred JVS from submitting its own annexation petition, without the prior approval of Oberlin. JVS further argues that the trial court erred in issuing a permanent injunction barring the Commissioners from taking any action on JVS's annexation petition. We agree.

{¶35} When confronted with an issue of contract interpretation, "we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, ¶ 37.

{¶36} The only provision in the 1971 contract related to annexation reads in full: "[JVS] further agrees to sign an annexation petition for their property if presented to them." By its clear

language, this provision only requires JVS to sign an annexation petition "if presented" and establishes no further obligations or prohibitions on the parties regarding annexation.

{¶37} Therefore, we conclude that the trial court erred when it determined that the contract barred JVS from submitting its own annexation petition and when it issued a permanent injunction barring the Commissioners from taking any action on JVS's annexation petition.

{¶38} JVS's second assignment of error is sustained.

### JVS' Assignment of Error III

**The trial court erred in holding that the JVS's request for a writ of mandamus was moot, based on its erroneous conclusion that the JVS was not permitted to submit an expedited type-II annexation petition. Instead, a writ of mandamus should issue—by this Court—ordering [Oberlin] to pass, and file with the Commissioners, an ordinance or resolution setting forth the services [Oberlin] will provide to the territory proposed for annexation, in compliance with [Oberlin]'s clear legal duty under R.C. 709.023(C).**

{¶39} In its third assignment of error, JVS contends that the trial court erred when it denied its motion for summary judgment on its claim for a writ of mandamus.

{¶40} JVS argued in its motion for summary judgment that upon the filing of its expedited type-II annexation petition, Oberlin was obligated pursuant to R.C. 709.023(C) to pass an ordinance or resolution stating what services it would provide, and an approximate date by which it would provide them to the territory proposed for annexation in the petition. In response, however, Oberlin argued that JVS's mandamus claim should fail for several reasons including, inter alia, that it failed to comply with R.C. 2731.04 and that Oberlin was under no duty to provide services where the city had objected to the annexation pursuant to R.C. 709.023(D).

{¶41} Because we conclude that the trial court erred when it determined that JVS was not permitted to submit an annexation petition pursuant to the contract, it necessarily follows that the trial court erred when it determined that JVS's request for a writ of mandamus was moot.

Nonetheless, we decline to consider the merits of JVS's motion for summary judgment regarding its writ of mandamus in the first instance.

> "This Court has repeatedly held that issues raised in summary judgment motions, but not considered by the trial court will not be decided by this Court in the first instance." *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP*, 9th Dist. Summit No. 28462, 2017-Ohio-8394, ¶ 31, citing *Skidmore v. Natl. Bronze & Metals (Ohio), Inc.*, 9th Dist. Lorain No. 12CA010328, 2014-Ohio-4423, ¶ 16; *Neura v. Goodwill Indus.*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 19; *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 13. *See also Expressions Hair Design v. Schneiderman*, 581 U.S. ——, ——, 137 S.Ct. 1144, 1151, (2017), quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. [898], [913], 134 S.Ct. 2120, (2014) ("[W]e are a court of review, not of first view."). "To consider summary judgment arguments in the first instance on appeal, 'effectively depriv[es] the non-prevailing party of appellate review.'" *McFarland* at ¶ 38, quoting *Guappone* at ¶ 13.

*Lopez v. Hulburt*, 9th Dist. Summit No. 28817, 2018-Ohio-2499, ¶ 10. Furthermore, we decline to take any position on whether or not other actions taken by either party have rendered this issue moot.

**{¶42}** JVS's third assignment of error is sustained in part and overruled in part.

### III.

**{¶43}** JVS's first assignment of error is overruled and its second assignment of error is sustained. JVS's third assignment of error is sustained in part and overruled in part. Oberlin's first and second assignments of error are overruled. Therefore, the judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and remanded

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JENNIFER A. FLINT and BRYAN M. SMEENK, Attorneys at Law, for Appellant/Cross-Appellee.

DENNIS M. O'TOOLE, MATTHEW A. DOOLEY, and STEVEN M. BOSAK, JR., Attorneys at Law, for Appellee/Cross-Appellant.