[Cite as *Enger v. Black*, 2023-Ohio-1932.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| | |
|---|---|
| BENJAMIN D. ENGER, et al. | C.A. No.      22AP0010 |
| Appellants | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK F. BLACK | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | CASE No.      2021 CVC-H 000032 |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2023

SUTTON, Presiding Judge.

**{¶1}** Appellants-Defendants Benjamin D. Enger and Kellie M. Enger appeal from the judgment of the Wayne County Court of Common Pleas granting summary judgment in favor of Appellee-Plaintiff Patrick F. Black. For the reasons that follow, this Court reverses and remands for further proceedings.

I.

**{¶2}** Mr. Black and his wife, Patrice, owned a home located at 1750 Sherck Boulevard in Wooster, Ohio. The Blacks first had a well drilled for the home in August of 1991 by Frontz Drilling. In 1992, Mr. Black had Howard Water Service install a water softener to treat all of the water entering the home from the well before the water was distributed to the faucets. In October of 1995, Mr. Black stated in his deposition that he "tried to improve" the water in the home by having Frontz Drilling return to the home and "plug" the well to a depth of 206 feet in order to "improve the quality of the water even more." At that time, Mr. Black stated that the water

contained "elevated minerals" that "you can taste[] and you can smell []." In 1997, Mr. Black first contacted the Ohio Department of Natural Resources regarding the quality of the water in his well. The quality of the water continued to be an issue, and in 1998, Mr. Black made further improvements to his home's water system by having Howard's Water Service install a reverse osmosis system on one sink in the kitchen.

{¶3} In 2007, a neighborhood meeting was held at the Wooster Township Fire Department. Mr. Black attended the meeting with about 10-12 of his neighbors and representatives from the Ohio Department of Natural Resources. As a result of that meeting, ODNR did testing on several of the wells within the neighborhood, including testing on Mr. Black's well. As a result of that testing, Mr. Black became aware that at least five wells, including his well, had barium present in the water. He also became aware that other wells in the neighborhood had methane present in the water system. ODNR believed the source of contamination to be an abandoned oil well somewhere near the neighborhood.

{¶4} Mr. Black stated that ODNR first tested the water straight from his well, and then the water after it passed through both the reverse osmosis system and the water softener. Evidence in the record in the form of a letter from ODNR to Mr. Black dated May 14, 1997, indicated water tested straight from the Black's well had the mineral barium present in a concentration of 6.3 mg/L, well above the maximum contaminant level ("MCL") established by the Safe Drinking Water Act. The total chloride and total dissolved solids (TDS) levels were also above the MCL standards. After the well water passed through the water softener system, the barium level dropped below the MCL standard, but the chloride and TDS levels remained above the MCL standard. After passing through both the softener and the reverse osmosis system, 99% of the barium was removed from

the water but the chloride and TDS levels remained above the MCL standard. The letter ended with the following caution to the Blacks:

> It appears that the softener is removing [b]arium at a percentage rate of 74.76%. The reverse osmosis is removing [b]arium at a percentage of 99%. The removal percentages indicated above represent the value removed [b]arium percentage for the sample collected on that day. The results do not provide any information as to the efficiency of the softener and/or the reverse osmosis all the time. The rate of barium removal depends on many factors that include: 1. the frequency of softener re-generation, 2. the age of the softeners, 3. the softener medium type and effectiveness, 4. the reverse osmosis maintenance program, and 5. the time elapsed between sampling and when the softener was last re-generated.

A July 3, 1997 letter from ODNR to the Blacks stated:

> The concentrations of Residue and Chloride exceed the Secondary Maximum Contaminant Concentration standards established by the Safe Drinking Water Act for public drinking water supplies. * * * Unfortunately, the concentration of [b]arium exceeds the Primary Maximum Contaminant Level standard established by the Safe Drinking Water Act for public water supplies. Therefore, The Division recommends that you immediately contact your County General Health District * * * or your physician for advice concerning domestic use of your water supply.

Mr. Black also received letters from ODNR dated December 9, 1997 and June 3, 1998 containing the same language.

{¶5} In 2019, the Blacks listed their home for sale. As part of that process, on June 3, 2019, Mr. Black completed a residential property disclosure form. The residential property disclosure form indicated water was supplied to the home from a private well. In response to a question as to whether the sellers knew of any "current leaks, backups or other material problems with the water system or quality of water," Mr. Black checked a box that indicated a response of "no."

{¶6} The following summer, in 2020, the Engers purchased the home from the Blacks pursuant to a Real Estate Purchase Agreement. That agreement contained a clause that indicated the Engers were purchasing the property "as-is."

**{¶7}** After purchasing the property, the Engers became aware that the well water was contaminated, and the contamination issue was an issue that the Blacks had been aware of for some time. The Engers sealed the well and installed a water holding tank at a cost to them in excess of $20,000.

**{¶8}** On January 20, 2021, the Engers filed a complaint against the Blacks in Wayne County Common Pleas Court, alleging fraud because the Blacks failed to complete the residential property disclosure form in good faith as required by R.C. 5302.30. The Engers dismissed Mrs. Black from the lawsuit, as she did not sign the residential property disclosure form.

**{¶9}** Mr. Black then filed a motion for summary judgment, alleging that: (1) the purchase agreement for the sale of the home contained an "as-is" clause, therefore, Mr. Black had no duty to disclose any facts of a material nature relative to the property; (2) Mr. Black did not fraudulently conceal the condition of the water well because the quality of the water could have been easily ascertained through an inspection and was on file with the county health department; and (3) the Engers could not show that Mr. Black made an affirmative misrepresentation or misstatement of material fact relative to the quality of the water well because the Engers never interacted with the Blacks prior to the sale of the property. The Engers responded in opposition.

**{¶10}** The trial court initially denied Mr. Black's motion, but upon a motion for reconsideration filed by Mr. Black, subsequently granted summary judgment in favor of Mr. Black. It is from that judgment the Engers appeal, assigning three errors for this Court's review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED WHEN IT FOUND THAT SELLER'S ACTION IN COMPLETING THE RESIDENTIAL PROPERTY DISCLOSURE FORM WAS NOT AN AFFIRMATIVE ACTION.**

**{¶11}** In their first assignment of error, the Engers argue the trial court erred in finding that Mr. Black's action in completing the residential property disclosure form was not an affirmative action, and, therefore, also erred in granting summary judgment in favor of Mr. Black.

**{¶12}** In response, Mr. Black argues that the trial court properly granted summary judgment in his favor, because: (1) the purchase agreement contained an "as is" clause, thus, Mr. Black had no duty to disclose any facts of a material nature relative to the property; (2) there was no fraud on the part of Mr. Black because the condition of the water well could have been easily ascertained through an inspection; and (3) the completion of the residential property disclosure form did not constitute an "affirmative action" required to establish fraud.

<u>Standard of Review</u>

**{¶13}** Appellate review of an award or denial of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). As this Court has previously noted, "[a] de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *Goodrich Corp. v. PolyOne Corp.*, 9th Dist. Summit No. 27691, 2016-Ohio-1068, ¶ 12, quoting *State v. Ross*, 9th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 33, quoting *State v. Consilio*, 9th Dist. Summit No. 27761, 2006-Ohio-649, ¶ 4. "Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record." *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP*, 9th Dist. Summit No. 28462, 2017-Ohio-8394, ¶ 14.

**{¶14}** Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

<u>Seller Engagement in Fraud</u>

**{¶15}** This Court has consistently held that "an 'as is' clause cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment. *Cadle v. Kehl*, 9th Dist. Lorain No. 17CA011205, 2018-Ohio-5266, ¶ 14, citing *Black v. Cosentino*, 117 Ohio App.3d 40, 44 (9th Dist.1996), citing *Tipton v. Nuzum*, 84 Ohio App.3d 33, 39 (9th Dist.1992). R.C. 5302.30 removed the distinction between patent (obvious and easily discoverable) and latent (not obvious or easily discoverable) defects. *Cadle* at ¶ 14, citing *Arbogast v. Werley*, 6th Dist. Lucas No. L-09-1131, 2010-Ohio-2249, ¶ 37. "Under R.C. 5302.30(D)(1), a seller of residential real estate must complete a statutorily required form disclosing 'material matters relating to the physical condition of the property to be transferred[.]'" *Cadle* at ¶ 14. This statutory requirement includes disclosure of "material matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of water supply to the property; * * * the presence of hazardous materials or substances * * *; and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D)(1). "It follows that even under circumstances where there is an 'as is' clause in a real estate contract, a seller may pursue a claim for fraudulent misrepresentation for failure to disclose a known material defect on the residential property disclosure form." *Cadle* at ¶ 14, citing *Quintile v. Hartley*, 9th Dist. Medina No. 2993-M, 2000 WL 372319, *1-3 (Apr. 12, 2000) and *Werley* at ¶ 38.

**{¶16}** In order to prove fraudulent misrepresentation, a buyer must establish each of the following elements:

(1) a representation or, where there is a duty to disclose, concealment of a fact,
(2) which is material to the transaction at hand,
(3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(4) with the intent of misleading another into relying upon it,
(5) justifiable reliance upon the representation or concealment, and
(6) a resulting injury proximately caused by the reliance.

*Cadle* at ¶ 15, citing *Consentino* at 44, citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus. The trial court concluded that as a matter of law, Mr. Black was entitled to summary judgment because the Engers failed to show that Mr. Black made an "affirmative representation" required to prove a claim for fraudulent misrepresentation.

{¶17} However, the record does not support the trial court's conclusion that "the Plaintiffs did not rely upon any statements or representations made to them by Defendant with respect to the condition of the property, including its water source, as no statements or representations were made." Mr. Black made a representation to the Engers on the residential property disclosure form. In response to the question "[d]o you know of any current leaks, backups or other material problems with the water supply system or quality of water?", Mr. Black answered "no" by checking the box next to that answer.

{¶18} Mr. Black not only had a statutory duty to make this disclosure to the Engers, but he also had a duty to make the disclosure in "good faith." *See* R.C. 5302.30. Pursuant to R.C. 5302.30(A)(1), "good faith" means "honesty in fact[.]" The parties dispute whether or not the representation Mr. Black made on the residential property disclosure form regarding any problems with the water supply or quality of the water was false. In fact, Mr. Black stated during oral argument that he contested that the water was contaminated. Therefore, a genuine issue of material fact existed as to whether or not Mr. Black made a fraudulent misrepresentation to the Engers. As such, Mr. Black was not entitled to summary judgment as a matter of law.

{¶19}  The Engers' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT FOUND THAT "IT IS UNDISPUTED THAT DEFENDANT (SELLER) NEVER MADE ANY REPRESENTATIONS OR STATEMENTS OF ANY KIND TO THE PLAINTIFF CONCERNING THE WELL OR WATER QUALITY."**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED WHEN IT FOUND THAT BUYERS HAD THE OPPORTUNITY TO PERFORM TESTING ON THE WELL PRIOR TO THE PURCHASE OF THE PROPERTY AND ANY DEFECT ASSOCIATED WITH THE WELL WAS OPEN AND OBVIOUS.**

{¶20}  In their second and third assignments of error, the Engers raise numerous additional challenges to the trial court's judgment.  As this Court's resolution of the first assignment of error is dispositive of this appeal, we decline to address the remaining assignments of error as they have been rendered moot.  *See* App.R. 12(A)(1)(c).

III.

{¶21}  The Engers' first assignment of error is sustained and their second and third assignments of error are moot.  The judgment of the Wayne County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.  In light of this Court's decision, Mr. Black's motion for sanctions is denied.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETTY SUTTON
FOR THE COURT

STEVENSON, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶22} I concur in the majority's judgment. However, I would address all of the Engers' assignments of error. The first and second assignments of error relate to the same issue and are properly resolved together. As to the third assignment of error, I would conclude that there remains a genuine dispute of material fact with respect to whether the condition of the well water was open and obvious. Whether the condition of the well water was open and obvious directly relates to their fraud claim as to whether the Engers' reliance on the disclosure was justifiable. If the

contaminated condition of the well water was open and obvious, it would not be reasonable to claim that it was justifiable to rely on representations that suggest the opposite is true.

APPEARANCES:

CRAIG R. REYNOLDS, Attorney at Law, for Appellants.

JOSHUA E. O'FARRELL, Attorney at Law, for Appellee.