[Cite as *McOmber v. Liebrecht*, 2023-Ohio-2019.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

MICHAEL K. MCOMBER, ET AL.,

    PLAINTIFFS-APPELLANTS,

    CASE NO. 15-22-05

    v.

WESLEY M. LIEBRECHT, ET AL.,

    O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CV-20-08-068

Judgment Reversed and Cause Remanded

Date of Decision: June 20, 2023

APPEARANCES:

    *Steven L. Diller* for Appellants

    *Matthew M. Mitchell* for Appellees

**MILLER, P.J.**

{¶1} Plaintiffs-appellants, Michael McOmber and McOmber Land, LLC (collectively the "McOmber Parties"), appeal the August 23, 2022 judgment of the Van Wert County Court of Common Pleas granting the motion for summary judgment of defendants-appellees, Wesley and Brooke Liebrecht. For the reasons that follow, we reverse.

## I. Background

### A. Factual History

{¶2} Michael McOmber and Wesley Liebrecht first became acquainted while the two worked together at the Eaton Corporation. In time, Wesley began assisting McOmber with his grain farming operation, which McOmber conducted under McOmber Land, LLC.

{¶3} In 2009, Wesley approached McOmber with a written proposal to jointly enter into a cattle production farm. McOmber and Wesley went back and forth about the specifics of the proposed operation, but they eventually agreed to move forward. Defendant-appellee, L & M Ag, LLC ("L & M"), was incorporated as the business entity for the cattle farm. McOmber was the sole member of L & M.

{¶4} Beginning in 2009, numerous loans were taken out to finance operations at the cattle farm. McOmber was the sole signatory on these loans. The

loans were used to purchase cattle, buy equipment for the farm, and build a livestock barn, among other things. The barn itself was owned by McOmber personally but was located on property owned by Wesley and his wife, Brooke Liebrecht.

{¶5} In the years that followed, Wesley actively managed the cattle farm while McOmber assumed a passive role. During this time, Wesley also engaged in several other side ventures under various business entities, including defendants-appellees, Slinger Trucking Services, LLC ("Slinger Trucking") and Prairie Creek Farms, LLC ("Prairie Creek"). Furthermore, Wesley organized another entity, Cover Crop Seeders LLC, that utilized a sprayer that was purchased with a loan taken out by McOmber. L & M held a 50 percent interest in Cover Crop Seeders LLC.

{¶6} By the end of 2015, following a particularly low-yield group of cattle, L & M found itself in dire financial straits and the cattle farm ceased operations. This left McOmber, the only signatory on all L & M's debts, with significant liabilities.

{¶7} For reasons disputed by the parties, on July 7, 2017, Wesley and Brooke signed a promissory note for $499,822.21 in favor of McOmber Land, LLC. In connection with the promissory note, McOmber, Wesley, and Brooke executed a "Memorandum of Understanding" that provided:

> Whereas Michael McOmber and Wesley Liebrecht have had various business ventures over the past several years, without the express

benefit of written terms and conditions. This memorandum of understanding is prepared to identify the business ventures, status of any liability and refinance of the debt obligation.

1.    A note from Wesley and Brooke Liebrecht in the face amount of $499,822.21 payable to McOmber Land LLC entered into to establish a repayment plan for various debt owed by Liebrecht's [sic] to McOmber Land LLC as identified on exhibit "A" attached hereto and incorporated by reference herein.

2.    A sprayer operated by Cover Crop Seeded [sic] LLC was purchased with financing in the sole name of Michael McOmber and his LLC with an approximate balance of $150,000.00. Wesley is in the process of refinancing this debt out of Michael's name. Refinance is to be completed by July 31, 2017.

3.    A barn was constructed on land owned by Liebrecht's [sic] with financing at Ag Credit. The approximate loan balance is $310,000.00. The loan is in the sole name of Michael McOmber and his LLC. Wesley is in the process of refinancing the debt out of Michael's name. Refinance to be completed by July 31, 2017.

4.    If financing cannot be obtained or a bank commitment letter for financing, by the end of July 2017, the barn, equipment and sprayer will be sold and the difference between the note amount and the selling price will be added to the note referenced in number 1 above.

Wesley was not successful in refinancing any of the loans listed in the Memorandum of Understanding.

{¶8} On July 4, 2018, McOmber entered into a "Purchase Agreement" with Bradley Liebrecht and Michael Liebrecht, Wesley's brother and father. McOmber agreed to sell the livestock barn and all associated equipment to Bradley Liebrecht and Michael Liebrecht for $244,229.45. McOmber also agreed to sell them a New

Holland tractor and associated attachments for $22,526.38. The Purchase

Agreement concluded with the following provision (the "Release Provision"):

> By signing this purchase agreement the seller [McOmber] agrees to release with the purchase of the items described above any and all claim [sic] associated with Wes and Brooke Liebrecht. Along with this agreement to [sic] seller agrees to sign a Release of Liability Agreement at or before the closing of this sale.

Wesley and Brooke were not parties to the Purchase Agreement.

## B. Procedural History

**{¶9}** The McOmber Parties first filed a complaint against Wesley, Brooke,

and the defendant LLCs (i.e., L & M, Slinger Trucking, and Prairie Creek) on

August 7, 2020. An amended complaint was filed with leave of court on November

9, 2020. The McOmber Parties' amended complaint set forth six causes of action:

(1) breach of fiduciary duty; (2) fraudulent inducement; (3) fraud; (4) judgment on

the promissory note; (5) conversion and theft; and (6) constructive trust.[1] An answer

to the amended complaint was filed on December 14, 2020, on behalf of Wesley,

Brooke, Slinger Trucking, and Prairie Creek.[2]

**{¶10}** On May 2, 2022, competing motions for summary judgment were

filed. McOmber Land, LLC filed a motion for partial summary judgment against

---

[1] We note that although denominated as a cause of action in the McOmber Parties' amended complaint, "[a] claim for a constructive trust is a remedy, not an independent cause of action." *Benkovits v. Bandi*, 8th Dist. Cuyahoga No. 109533, 2021-Ohio-1877, ¶ 24.

[2] Although Wesley, Brooke, and the defendant LLCs were all initially represented by the same counsel, counsel withdrew from his representation of L & M the day after the amended complaint was filed. No attorney entered an appearance as substitute counsel for L & M, and L & M never answered the amended complaint.

Wesley and Brooke seeking judgment against Wesley and Brooke on the promissory note. The motion was not filed on behalf of McOmber in his personal capacity.

{¶11} Wesley and Brooke also filed a motion for summary judgment. Their motion did not indicate that it was being filed on behalf of Slinger Trucking or Prairie Creek. In their motion, Wesley and Brooke argued they were entitled to summary judgment on all of the McOmber Parties' claims. They asserted the Release Provision was a global release and they were therefore totally relieved from liability on each of the McOmber Parties' claims. In the alternative, Wesley and Brooke requested partial summary judgment on McOmber's fraud, fraudulent inducement, and breach of fiduciary duty claims, arguing there was no evidence to support these claims.

{¶12} In the following weeks, the parties exchanged responses to each other's motions for summary judgment. Notably, in response to Wesley and Brooke's argument that the Release Provision was a global release of all claims the McOmber Parties might have against them, the McOmber Parties submitted an affidavit from McOmber wherein he claimed:

> I understood the language of the Purchase Agreement * * * [as] releasing any and all claims associated with Wes and Brooke Liebrecht with respect to [the barn, tractor, and associated equipment], only. It had nothing to do with the Note balance and I informed Bradley Liebrecht of my position prior to the signing of the Purchase Agreement that I was refusing to release Wes and Brooke Liebrecht from the Note.

(Underlining sic.).

{¶13} As support for McOmber's understanding of the Release Provision, McOmber's affidavit incorporated a copy of an email Bradley sent to McOmber on November 15, 2018. In the email, Bradley indicated that he had drafted an agreement for McOmber's review (the "Proposed Agreement"). The Proposed Agreement, an unexecuted copy of which was attached to Bradley's email, provided in relevant part:

### Consideration

Michael McOmber and his heirs, executors, administrators, legal representatives or other associations releases [sic] and forever discharges [sic] Wesley and Brooke Liebrecht, their heirs, executors, administrators, legal representatives and assigns from all manner of actions, causes of action, accounts, claims and demands for or by reason of any damage, loss or injury to person and property which has been or may be sustained as a consequence of the claim details below.

### Details

Any claims which occurred as a result of the participation in the operation of L & M Ag, LLC, Prairie Creek Farms and all other operations prior to this agreement.

### Full and Final Settlement

For the above noted description and consideration, the parties to this Agreement further agree not to make claim or take proceedings against any other person which might claim contribution or indemnity under the provisions of any statute or otherwise.

### Terms

> It is declared that the terms of this settlement (Exhibit A) are fully understood; that Wesley and Brooke Liebrecht will make the scheduled payments described in Exhibit A in full by December 31 of each year to Michael McOmber or his trust. The initial down payment is to be made prior to January 1, 2019 and the repayment plan is to become effective January 1, 2019. The annual payments are to be determined to be the minimum and no penalties will be incurred for early payoff.

> This Agreement contains the entire agreement between the parties to this release and the terms of this release are contractual and not a mere recital.

(Boldface and underlining sic.). The Proposed Agreement featured signature lines for McOmber and for Wesley. The "Exhibit A" attached to the Proposed Agreement set forth a "Repayment Schedule" whereby Wesley and Brooke would pay McOmber a total of $515,100, including interest, over a 22-year period.

{¶14} In his affidavit, McOmber averred that he rejected the Proposed Agreement because it did not allow for repayment of the entire balance of the promissory note. McOmber stated that "no further negotiations continued and [he has] never released Wesley Liebrecht and Brooke Liebrecht from the terms of the Note nor * * * waived or release [sic] any other claims other than as to the sale of the cattle barn and related equipment."

{¶15} For their part, Wesley and Brooke submitted an affidavit from Bradley wherein he maintained that he "purchased the building and some equipment to settle any debts Wesley or Brooke Liebrecht would have to Michael McComber [sic]" and that he "would not have purchased the building if Michael McComber [sic] would

-8-

not have agreed to release * * * any and all claims arising from L & M Ag." He stated it was his "expectation Wesley and Brooke Liebrecht would be released from liability" with the purchase of the livestock building.

{¶16} Oral arguments on the motions for summary judgment were held on August 11, 2022. On August 23, 2022, the trial court granted Wesley and Brooke's motion for summary judgment in its entirety and entered judgment in their favor on all of the McOmber Parties' claims. The trial court concluded that "[r]eading the purchase agreement, it is a clear release of any and all claims with the Defendants from the Plaintiff." The trial court explained that "[t]he assertion of [McOmber's] affidavit that the release was not understood to be a complete release is an assertion that cannot withstand a plain reading of the document." The trial court did not address Wesley and Brooke's alternative arguments or consider McOmber Land, LLC's motion for partial summary judgment, finding these matters to have been mooted.

## II. Assignments of Error

{¶17} On September 20, 2022, the McOmber Parties timely filed a notice of appeal. They raise the following seven assignments of error for our review:

### First Assignment of Error

**The trial court erred in granting summary judgment to the appellees as there were material facts in dispute and summary judgment should not have been entered as a matter of law.**

**Second Assignment of Error**

**The trial court erred by allowance of the appellees to submit the alleged global release that was not provided nor disclosed during discovery.**

**Third Assignment of Error**

**The trial court erred in granting summary judgment in favor of the defendants L & M Ag, LLC, Slinger Trucking Services, LLC and Prairie Creek Farms, LLC as there was no motion for summary judgment filed by such defendants.**

**Fourth Assignment of Error**

**The trial court erred in granting summary judgment against McOmber Land, LLC in favor of the appellees Wesley and Brooke Liebrecht based on the alleged global release as it was not a signatory to that document.**

**Fifth Assignment of Error**

**The trial court erred in granting summary judgment in favor of defendants L & M, Ag, LLC, Slinger Trucking Services, LLC and Prairie Creek Farms, LLC as such entities were not named in the alleged global release.**

**Sixth Assignment of Error**

**The trial court erred in granting summary judgment in favor of the appellees, Brooke and Wesley Liebrecht against the appellant, McOmber Land, LLC as there was no motion for summary judgment filed by the appellees against McOmber Land, LLC.**

**Seventh Assignment of Error**

**The trial court erred as a matter of fact and law by denying plaintiff-appellant, McOmber Land, LLC's partial motion for summary judgment upon the promissory note against Wesley Liebrecht and Brooke Liebrecht.**

To the extent that we consider the McOmber Parties' assignments of error, we do so out of order, beginning with their second assignment of error.

### III. Discussion

**A. Second Assignment of Error: Did the court err by letting Wesley and Brooke use the Purchase Agreement to support their summary judgment motion?**

{¶18} In their second assignment of error, the McOmber Parties argue that the trial court should not have relied on the Purchase Agreement to grant Wesley and Brooke's motion for summary judgment because it was not timely provided during discovery. The McOmber Parties maintain that the Purchase Agreement "was never raised by [Wesley and Brooke] from the inception of this case, throughout the course of discovery and never raised by [Wesley and Brooke] as a defense in their depositions." They argue that Wesley and Brooke's use of the Purchase Agreement was prejudicial because, due to the tardy disclosure of the document, they were unable to depose Bradley Liebrecht or Michael Liebrecht about the Purchase Agreement and they were denied an opportunity to reopen Wesley and Brooke's depositions.

{¶19} However, the record and the McOmber Parties' own admissions undermine the McOmber Parties' claims. In January 2022, the trial court set a discovery cut-off date of April 19, 2022, and a summary-judgment cut-off date of May 2, 2022. The McOmber Parties concede that Wesley and Brooke provided

them with a copy of the Purchase Agreement on April 11, 2022, eight days before discovery closed. The McOmber Parties did not then issue notices of deposition to Bradley Liebrecht or Michael Liebrecht. Nor did they move to reopen Wesley and Brooke's depositions or petition the trial court to extend the discovery or summary-judgment cut-off dates. Instead, the McOmber Parties operated within the timeframes set by the trial court, with McOmber Land, LLC's motion for partial summary judgment being filed on the May 2, 2022 deadline. Finally, it is hard to paint the McOmber Parties as the victims of an unfair surprise given that McOmber was, indisputably, a signatory to the Purchase Agreement. Accordingly, because the McOmber Parties knew, or should have known, about the existence of the Purchase Agreement and considering they did nothing to mitigate the prejudice supposedly caused by the late disclosure, we conclude the trial court did not err by allowing Wesley and Brooke to support their motion for summary judgment with the Purchase Agreement.

{¶20} The McOmber Parties' second assignment of error is overruled.

**B. First Assignment of Error: Did the trial court err by awarding summary judgment to Wesley and Brooke based on the purported global release?**

{¶21} In their first assignment of error, the McOmber Parties argue that the trial court erred by granting Wesley and Brooke's motion for summary judgment. They contend that the trial court erred by disregarding extrinsic evidence of the parties' understanding of the Release Provision and that when such evidence is

properly considered, there is a genuine issue of material fact as to whether the Release Provision was a global release.

### i. Summary-Judgment Standard of Review

{¶22} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25.

{¶23} Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994). Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252.

**{¶24}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

## ii. General Principles of Contract Interpretation

**{¶25}** "[T]he construction and interpretation of contracts are matters of law subject to a de novo standard of review." *Thiel's Wheels, Inc. v. State Route 30, Ltd.*, 3d Dist. Wyandot No. 16-21-06, 2022-Ohio-2093, ¶ 11.

**{¶26}** As the Supreme Court of Ohio has explained:

> When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.

*Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37.

**{¶27}** "Contract language is ambiguous only where its meaning cannot be determined from the four corners of the contract or where the language is susceptible to two or more conflicting, but reasonable, interpretations." *McGonagle v. Somerset Gas Transm. Co., L.L.C.*, 10th Dist. Franklin No. 11AP-156, 2011-Ohio-5768, ¶ 12. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "The determination whether a contract is ambiguous is a question of law." *Bryan Publishing Co. v. Kuser*, 3d Dist. Henry No. 7-07-17, 2008-Ohio-2610, ¶ 17.

**{¶28}** "A court will only consider extrinsic evidence in an effort to give effect to the parties' intentions if the language of a contract is ambiguous." *McGonagle* at ¶ 12. Where a contract is determined to be ambiguous, the ambiguity may be resolved by resort to extrinsic evidence such as "'(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, ¶ 9, quoting *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 56 (2d Dist.1998).

**{¶29}** Although the question of contractual ambiguity is a matter of law for the court, "'[t]he meaning of the words in an ambiguous contract [is] a question of

fact.'" *Campbell v. 1 Spring, L.L.C.*, 10th Dist. Franklin No. 19AP-368, 2020-Ohio-3190, ¶ 9, quoting *Atelier Dist., L.L.C. v. Parking Co. of Am., Inc.*, 10th Dist. Franklin No. 07AP-87, 2007-Ohio-7138, ¶ 17. Consequently, courts ordinarily should not grant summary judgment when contractual language is ambiguous because it is the role of the trier of fact to resolve the ambiguity. *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 1st Dist. Hamilton No. C-180610, 2020-Ohio-1471, ¶ 18; *Wolf v. Miller Diversified Consulting, L.L.C.*, 6th Dist. Wood No. WD-07-049, 2008-Ohio-1233, ¶ 24.

### iii. The Parol Evidence Rule

**{¶30}** In addition to the well-established principle that extrinsic evidence has no relevance to the interpretation of an unambiguous contract, another equally venerable rule of law—the parol evidence rule—also generally bars the introduction of such evidence. "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000), quoting 11 Williston on Contracts, Section 33:4, at 569-570 (4th Ed.1999). "The parol evidence rule is a rule of substantive law that excludes extrinsic evidence to prove the content of an agreement."

*Cronkelton v. Guaranteed Constr. Servs.*, 3d Dist. Logan No. 8-12-01, 2013-Ohio-328, ¶ 9. It serves to "protect[] the integrity of final, written agreements." *Id.*

{¶31} The parol evidence rule "'comes into operation when there is a single and final memorial of the understanding of the parties.'" *Galmish* at 27, quoting *In re Gaines' Estate*, 15 Cal.2d 255, 264-265 (Cal.1940). That is, "[t]he parol evidence rule applies, in the first instance, only to integrated writings * * *." *Id.* at 28. "An 'integration' for purposes of the parol evidence rule 'is "[t]he full expression of the parties' agreement, so that all earlier agreements are superseded * * *."'" *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2d Dist. Montgomery No. 26408, 2015-Ohio-3386, ¶ 19, quoting *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, ¶ 28 (Cupp, J., concurring), quoting *Black's Law Dictionary* 880 (9th Ed.2009). On the other hand, "[a] contract is partially integrated if the parties adopt it as a final expression of only one portion of a larger agreement, making the contract incomplete." *McGonagle*, 2011-Ohio-5768, at ¶ 19. Where an integration is only partial, "'"[p]arol (extrinsic) evidence is admissible to clear up ambiguities with respect to the terms that are not integrated."'" *PNC Bank* at ¶ 19, quoting *Williams* at ¶ 28 (Cupp, J., concurring), quoting *Black's* at 880. Extrinsic evidence may only be introduced to "supplement, but not vary or contradict, the written terms of a partially integrated contract." *McGonagle* at ¶ 19.

**iv. Because there is an issue of material fact whether the Release Provision was a global release, the trial court erred by granting summary judgment.**

{¶32} In awarding summary judgment to Wesley and Brooke, the trial court determined that the language of the Release Provision was unambiguous and that it evinced an intention on the part of McOmber to completely release Wesley and Brooke from liability for any claim the McOmber Parties might have against them. To be sure, the first sentence of the Release Provision used sweeping language (i.e., "any and all claim [sic] associated with Wes and Brooke Liebrecht"), and in other cases, courts have read similar language as unequivocally relieving the released party from liability for any claim held by the releasing party. *See, e.g.*, *Richland Auto Group, Inc. v. Fifth Third Bank*, 5th Dist. Richland No. 11CA77, 2012-Ohio-3060, ¶ 6 and 21; *Dennewitz v. AIU Ins. Co.*, 4th Dist. Ross No. 03CA2748, 2004-Ohio-2567, ¶ 9-10. However, the first sentence of the Release Provision must be read in conjunction with all the other language contained in the Purchase Agreement, particularly the second sentence of the Release Provision, wherein the parties stated, "Along with this agreement to [sic] seller agrees to sign a Release of Liability Agreement at or before the closing of this sale." When read together, the first sentence of the Release Provision can hardly be described as an unambiguous release of any and all claims the McOmber Parties might have against Wesley and Brooke.

**{¶33}** While the first sentence of the Release Provision might, in isolation, be understood as effectuating a complete global release, the second sentence of the Release Provision makes this reading doubtful. The second sentence of the Release Provision indicated that McOmber was to sign an additional release of liability agreement—the terms of which were not specified or summarized anywhere in the Purchase Agreement. It begs the question why a separate release agreement was necessary if, through the first sentence of the Release Provision, McOmber released all the claims he and his business might have against Wesley and Brooke. Although the first sentence of the Release Provision establishes that McOmber released *something* by signing the Purchase Agreement, the second sentence obscures, rather than clarifies, the scope of that release. Thus, it is impossible to give the Release Provision definite legal meaning from the language of the Purchase Agreement alone, and accordingly, the Release Provision is ambiguous.

**{¶34}** Additionally, the second sentence of the Release Provision indicates that the Release Provision was not the final expression of the parties' (i.e., McOmber, Bradley Liebrecht, and Michael Liebrecht) agreement with regard to McOmber's release of liability. In the second sentence, the parties contemplated that a separate agreement would need to be executed in order to fully achieve their intentions with respect to McOmber's release of liability. Thus, at least as to this issue, it cannot be said that the Purchase Agreement contains the entirety of the

parties' agreement. Accordingly, the Purchase Agreement is facially incomplete, meaning that the Purchase Agreement is only partially integrated. For this reason, and because the Release Provision is otherwise ambiguous, it is necessary to turn to extrinsic evidence to determine what the parties intended when they assented to the language contained in the Release Provision.

{¶35} Turning to the extrinsic evidence submitted in support of and in opposition to Wesley and Brooke's motion for summary judgment, and viewing this evidence in a light most favorable to the McOmber Parties, we conclude that a genuine issue of material fact exists concerning the scope of the release embodied in the Release Provision. In his affidavit, Bradley maintained that he understood the Release Provision to be a global release and that he would not have purchased the livestock barn from McOmber if he did not believe that McOmber was completely releasing all claims he had against Wesley and Brooke. By contrast, in his affidavit, McOmber averred that he understood the Release Provision as releasing only those claims against Wesley and Brooke connected to the livestock barn, tractor, and associated equipment and that he specifically told Bradley that he was not forgoing his rights under the promissory note. This latter averment is particularly important as it indicates Bradley might have had actual notice that McOmber executed the Purchase Agreement understanding the Release Provision to be something other than a global release. *See Ma*, 2020-Ohio-1471, at ¶ 18

("Normally, a party * * * need[s] to convey [his] gloss on an ambiguous term to the counterparty for that to be probative * * *.").

**{¶36}** Furthermore, McOmber insisted in his affidavit that he never agreed to release Wesley and Brooke from claims other than those related to the livestock barn, tractor, and related equipment. The Proposed Agreement—the very existence of which is inconsistent with the assertion that the Release Provision was intended to be a global release and with Bradley's claim that he understood the Release Provision to operate as a global release—lends some additional support to McOmber's claim. Insofar as the Proposed Agreement was not executed, it cannot modify or add to the contractual rights or obligations created under the Purchase Agreement. However, the Proposed Agreement—both by the fact of its existence and the content of its provisions—is probative of the parties' intentions and understandings concerning the scope of the Release Provision and might supply needed clarification in this regard.

**{¶37}** Therefore, construing the available extrinsic evidence in a light most favorable to the McOmber Parties, there is a genuine issue of material fact whether the Release Provision was intended to operate as a complete release or whether a more limited release was intended. Ascertaining the parties' intent under these circumstances is a matter for the trier of fact in this case, and accordingly, we

conclude that the trial court erred by granting Wesley and Brooke's motion for summary judgment.

{¶38} The McOmber Parties' first assignment of error is sustained.

## C. The Remaining Assignments of Error

{¶39} In light of our conclusion that the trial court erred by granting Wesley and Brooke's motion for summary judgment in its entirety, it is no longer of consequence whether the trial court might have erred by granting summary judgment in favor of parties who did not formally file a motion for summary judgment (i.e., L & M, Slinger Trucking, and Prairie Creek). Nor does it matter whether the trial court might have erred by entering judgment against McOmber Land, LLC and in favor of L & M, Slinger Trucking, and Prairie Creek even though those parties were not mentioned in the Purchase Agreement and did not sign it. Therefore, the issues presented in the third, fourth, fifth, and sixth assignments of error are no longer live, and these assignments of error are moot. *See* App.R. 12(A)(1)(c).

{¶40} In the seventh assignment of error, McOmber Land, LLC argues that the trial court erred by failing to grant its motion for partial summary judgment and that this court ought to enter judgment against Wesley and Brooke on the promissory note. Irrespective of our opinion of the merits of McOmber Land, LLC's motion

for partial summary judgment, we decline to consider its arguments further or to afford the relief requested.

**{¶41}** When the trial court granted Wesley and Brooke's motion for summary judgment, it found that all remaining matters in the case were moot. This included Wesley and Brooke's alternative argument for partial summary judgment (i.e., that there was no evidence to support McOmber's fraud, fraudulent inducement, and breach of fiduciary duty claims) as well as McOmber Land, LLC's motion for partial summary judgment. Consequently, these went unaddressed by the trial court in the first instance.

**{¶42}** "[I]ssues raised in summary judgment motions, but not considered by the trial court[,] will not be decided by [the appellate court] in the first instance." *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP*, 9th Dist. Summit No. 28462, 2017-Ohio-8394, ¶ 31; *see Alcus v. Bainbridge Twp.*, 11th Dist. Geauga No. 2019-G-0206, 2020-Ohio-626, ¶ 30 ("Where the trial court does not rule on a summary judgment argument because it finds it moot, it is not proper for the appellate court in the first instance to address the argument."). "To consider summary judgment arguments in the first instance on appeal 'effectively depriv[es] the non-prevailing party of appellate review.'" *McFarland* at ¶ 38, quoting *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 13. Although we review a trial court's summary-judgment decision de novo, we are

ultimately "a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718, 125 S.Ct. 2113 (2005), fn. 7. Therefore, all the issues the trial court found to be moot in light of its summary-judgment decision must first be assessed and decided by the trial court.

## IV. Conclusion

{¶43} For the foregoing reasons, the McOmber Parties' first assignment of error is sustained. Having found error prejudicial to the appellants herein in the particulars assigned and argued, we reverse the judgment of the Van Wert County Court of Common Pleas and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/jlr**